UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION


UNITED STATES OF AMERICA, )
)
Plaintiff, )
)
v. )            No. 3:16-CR-61
)
PHILLIP MICHAEL HUDDLESTON and )
JOHN THOMAS HATFIELD, )
)
Defendants. )


## <u>MEMORANDUM OPINION</u>

This matter is before the Court on Chief Magistrate Judge Clifford C. Shirley's Report and Recommendation [doc. 58], Defendants' Joint Objections to the Report and Recommendation [doc. 61], and the United States' Response [doc. 64]. For the reasons herein, the Court will overrule the objections and accept Judge Shirley's Report and Recommendation in whole.

## I.    BACKGROUND

In this criminal action, the United States alleges that Protech Metal Finishing, LLC ("Protech")—an East Tennessee company that specializes in applying plating to metal parts—is a contractor or subcontractor to the Department of Defense. [Superseding Indictment, doc. 35, at 1–2]. Specifically, the United States claims that the Department of the Army awarded to Protech three military contracts, which required Protech to apply nickel-plating finishes to ammunition racks for use in battle tanks. [*Id.* at 2, 7]. According

to the United States, Defendants knowingly failed to follow the contractual specifications relating to the nickel-plating finishes and tried, through various deceptive acts, to conceal their failures to follow them. [*Id.* at 7–9]. The United States also alleges that Defendants instructed Protech's employees not to meet the specifications and to conceal their failure to meet them. [*Id.* at 8–9].

As a result, the United States charged Defendants with multiple criminal offenses, including a *Klein* conspiracy under 18 U.S.C. § 371, which comprises Count I of the United States' Superseding Indictment. [*Id.* at 6–12]. As part of this conspiracy, the United States maintains that Defendants (1) defrauded the Department of Defense by providing it with racks that they knew did not adhere to contractual specifications, (2) impaired and impeded the Department of Defense from evaluating Protech's contractual performance, and (3) impaired and impeded the Environmental Protection Agency ("EPA") from enforcing statutes and regulations concerning the storage of hazardous waste, which Protech generated as a byproduct of its plating processes. [*Id.* at 6–7, 9]. In response to the United States' charge under § 371, Defendants moved to dismiss Count I based on a twofold argument. First, they maintain that the United States violates the doctrine of duplicity because it alleges three distinct conspiracies in Count I. [Defs.' Mot. to Dismiss, doc. 21, at 1–3]. Second, they contend that the type of conspiracy in this case, a *Klein* conspiracy, is not chargeable under § 371. [Defs' Second Mot. to Dismiss, doc.

23, at 1–4]. In the alternative, Defendants move to strike surplusage in Count I. [Defs.'
Mot. to Strike, doc. 17, at 1–6].[1]

After conducting a hearing on Defendants' motions, Judge Shirley concluded that
the United States adequately alleges a *Klein* conspiracy, that the allegations in Count I are
not duplicitous, and that Count I has no surplusage. [R & R. at 2]. He therefore
recommended that this Court should deny Defendants' motions, with the exception of
permitting a special verdict form. [*Id.*]. Defendants timely objected to Judge Shirley's
recommendations. The Court will now address their objections.

## II.    STANDARD OF REVIEW

When reviewing a magistrate judge's recommendation on a non-dispositive issue,
the Court must accept that recommendation unless it is clearly erroneous or contrary to
law. 28 U.S.C. § 636(b)(1)(A); Fed. R. Crim. P. 59(a). If the magistrate judge's
recommendation "leaves the reviewing court with 'a definite and firm conviction that a
mistake has been committed,'" it is clearly erroneous or contrary to law. *Tri-Star
Airlines, Inc. v. Willis Careen Corp. of L.A.*, 75 F. Supp. 2d 835, 839 (W.D. Tenn. 1999)
(quoting *Heights Cmty. Congress v. Hilltop Realty, Inc.*, 774 F.2d 135, 140 (6th Cir.
1985)). When reviewing a magistrate judge's recommendation on a dispositive issue, on
the other hand, the Court conducts a de novo review of that recommendation. 28 U.S.C.
§ 636(b)(1); Fed. R. Crim. P. 59(b)(3). A de novo review requires the Court "to give
fresh consideration to those issues to which specific objection has been made by a party."

---

[1] Defendant Phillip Michael Huddleston initially filed these motions. Defendant John
Thomas Hatfield joined in them after he entered the case.

*United States v. Raddatz*, 447 U.S. 667, 675 (1980) (quotation omitted). In doing so, the Court reaches "the ultimate determination of the matter" through its own judicial discretion. *Id.* at 675–676. After its review, it "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

### III. ANALYSIS

18 U.S.C. § 371 is the federal general conspiracy statute—in contrast to other federal conspiracy statutes that deal with specific types of conspiracies, like the RICO conspiracy statute under 18 U.S.C. § 1962(d)—and it proscribes a conspiracy (1) to commit an offense against the United States or (2) to defraud the United States:

> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 371. The statute's first clause is known as the "offense clause," whereas the statute's second clause is known as the "defraud clause." *See United States v. Minarik*, 875 F.2d 1186, 1186–87 (6th Cir. 1989) ("The statute is written in the disjunctive in order to criminalize two categories of conduct: conspiracies to commit offenses specifically defined elsewhere in the federal criminal code, and conspiracies to defraud the United States."). In the defraud clause, Congress never defined the phrase "to defraud the United States."

## A. Defendants' First Objection

Defendants' initial objection strikes at the relationship between § 371's defraud clause and a doctrine known as the "*Klein* conspiracy doctrine,"[2] a body of federal precedent in which courts have held that the term "to defraud" under § 371 requires a broader definition than that same term requires in its common-law form. *See United States v. Collins*, 78 F.3d 1021, 1037 (6th Cir. 1996). Defendants contend that courts, at common law, have historically viewed the infinitive verb "to defraud" to mean the deprivation of money or property by some dishonest means. [Defs.' Br. *Klein* Conspiracy, doc. 25-1, at 2]. They argue that the words "to defraud" in § 371 ought to receive its traditional meaning because Congress chose not to define it. [*Id.* at 18]; *see Evans v. United States*, 504 U.S. 255, 259 (1992) ("It is a familiar 'maxim that a statutory term is generally presumed to have its common-law meaning." (quotation omitted)); *but see Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 115 (2001) ("Canons of construction need not be conclusive and are often countered, of course, by some maxim pointing in a different direction."); Karl N. Llewellyn, *Remarks on the Theory of Appellate Decision and the Rules or Canons of About How Statutes Are to Be Construed*, 3 Vand. L. Rev. 395, 399 (1950) (launching a now-famous attack against judicial canons of statutory interpretation and noting that for each canon of statutory interpretation, an opposite canon exists and "lead[s] in [a] happily variant direction[]").

---

[2] The term "*Klein*" conspiracy doctrine is a titular moniker from the case *United States v. Klein*, 247 F.2d 908 (2d Cir. 1957).

Instead of applying this common-law definition to § 371—a definition that would limit the statute's reach to fraud resulting in the deprivation of money or property— courts have relied on the *Klein* conspiracy doctrine to construe the term "to defraud" more much broadly so that it includes "*any interference* with a lawful governmental function by dishonest means." [Defs.' Br. *Klein* Conspiracy at 2 (emphasis added)]. Defendants claim that courts, in adopting this definition under the *Klein* conspiracy doctrine, have transgressed their authority by enshrining into case law "a common law crime, created by the courts rather than Congress." [*Id.* at 16–17 (quotation omitted)]. Defendants therefore urge the Court to dismiss Count I of the superseding indictment. Because they challenge the superseding indictment's sufficiency, they raise a dispositive issue, *see, e.g.*, *United States v. Tigner*, No. 2:15-cr-20043-JTF-dkv, 2016 WL 320994, at *1 (W.D. Tenn. Jan. 25, 2016); *Brown v. United States*, 187 F. Supp. 2d 887, 895 (E.D. Mich. 2002), which the Court reviews through the prism of the de novo standard.

Against the backdrop of Defendants' arguments, Defendants concede—as they must—that the *Klein* conspiracy doctrine is "well-settled common law," and they admit that "this Court is bound by controlling Sixth Circuit precedent in this matter." [Defs.' Mot. to Dismiss at 3]. Indeed, the Sixth Circuit has acknowledged that the words "to defraud" in § 371 have "very broad meaning" and "extend[] beyond [their] common law usage and include[] interference or obstruction of a lawful governmental function 'by deceit, craft or treachery or at least by means that are dishonest.'" *Collins*, 78 F.3d at 1037 (quotation omitted)); *see United States v. Thompson*, 366 F.2d 167, 170 (6th Cir. 1966) ("It has long been established that [§ 371's] statutory language is not confined to

fraud as that term has been defined in the common law." (quoting *Dennis v. United States*, 384 U.S. 855, 861 (1966))). In fact, Defendants recognize that *every* federal circuit adheres to the *Klein* conspiracy doctrine. [Defs.' Br. *Klein* Conspiracy at 10–11].

And what is more, the Supreme Court has hardly been mum about its impression of the *Klein* conspiracy doctrine—it too has followed the doctrine through its own lineage of precedent. *Dennis*, 384 U.S. at 860–61; *Lutwak v. United States*, 344 U.S. 604, 608–10 (1953); *Glasser v. United States*, 315 U.S. 60, 66 (1942); *Hammerschmidt v. United States*, 265 U.S. 182, 188 (1924); *Haas v. Henkel*, 216 U.S. 462, 479 (1910); *see McNally v. United States*, 483 U.S. 350, 358 n.8 (1987) ("'[A] statute which . . . has for its object the protection of the individual property rights of the members of the civic body, is one thing; a statute which has for its object the protection and welfare of the government alone . . . [is] quite another.' Section 371 is a statute aimed at protecting the Federal Government alone[.]" (quotation omitted)); *Tanner v. United States*, 483 U.S. 107, 128 (1987) (noting that "we have *repeatedly* stated" that § 371 is broad enough to cover "any conspiracy for the purpose of impairing, obstructing, or defeating the lawful function of any department of Government" (emphasis added) (internal quotation marks and quotation omitted)); *United States v. Coplan*, 703 F.3d 46, 62 (2d Cir. 2012) (inviting the Supreme Court to reconsider the viability of the *Klein* conspiracy doctrine, but without success), *cert. denied*, 134 S. Ct. 71 (2013).

As Defendants are well aware, this Court and all district courts in this circuit are limited in their decision-making abilities by the doctrine of stare decisis, the "'venerable principle' that a prior published decision remains controlling unless overturned by an

inconsistent decision of the United States Supreme Court or by [the Sixth Circuit] sitting *en banc*." *Brown v. United States*, 462 F.3d 609, 620 (6th Cir. 2006) (Graham, J., dissenting) (quotation omitted); *see Michigan v. Bay Mills Indian Cmty.*, 134 S. Ct. 2024, 2036 (2014) (stating that "*stare decisis* is a foundation stone of the rule of law"); *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 478–79 (1987) (recognizing that "[t]he rule of law depends in large part on adherence to the doctrine of *stare decisis*," because it is "a natural evolution from the very nature of our institutions" (internal quotation marks and quotation omitted)); *United States v. Hunt*, 278 F. App'x 491, 500 (6th Cir. 2008) (stating that the Sixth Circuit's published decisions "*must* be followed" by district courts, in keeping with stare decisis (emphasis added)). Although the *Klein* conspiracy doctrine has been mounted as a fixture in the Sixth Circuit's and the Supreme Court's precedent—having endured as a common-law doctrine for decades under stare decisis—Defendants now invite the Court to disturb this precedent, framing their invitation as a "unique and historic opportunity." [R. & R. at 5].

But even if the Court agreed, with whole-hearted conviction, with Defendants' position that the *Klein* conspiracy doctrine is untenable for all the reasons Defendants recite, stare decisis would preclude it from acting on that conviction. *See Kimble v. Entm't, LLC*, 135 S. Ct. 2401, 2409 (2015) ("Respecting *stare decisis* means sticking to some wrong decisions. . . . [A]n argument that we got something wrong—even a good argument to that effect—cannot by itself justify scrapping settled precedent."); *United States v. Merkosky*, 135 F. App'x 828, 837 n.2 (6th Cir. 2005) (expressing disagreement with binding precedent but acknowledging a responsibility to abide by it nonetheless).

Simply, no amount of argument can compel this Court to stray from the *Klein* conspiracy doctrine, in light of the Supreme Court's binding precedent concerning this doctrine. *See Coplan*, 703 F.3d at 61 (stating that although the *Klein* conspiracy doctrine has "infirmities" that induce "considerable judicial skepticism," the Supreme Court's precedent is clear and requires fidelity to the doctrine "no matter how persuasive we find the arguments for breaking loose from the moorings of established judicial norms").

In fact, because Defendants' argument deals with statutory interpretation—namely the contention that "§ 371 has been interpreted [too] broadly," [Defs.' Br. *Klein* Conspiracy at 2]—an even sturdier form of stare decisis known as "statutory stare decisis" stands in their way:

> [S]*tare decisis* carries enhanced force when [we] . . . interpret[] a statute. . . . [W]e apply statutory *stare decisis* even when a decision has announced a "judicially created doctrine" designed to implement a federal statute. All our interpretive decisions, in whatever way reasoned, effectively become part of the statutory scheme[.]

*Kimble*, 135 S. Ct. at 2409 (quotation omitted); *see Patterson v. McLean Credit Union*, 491 U.S. 164, 172–73 (1989) ("Considerations of *stare decisis* have special force in the area of statutory interpretation[.]" (citations omitted)). The Supreme Court does not reverse course from statutory stare decisis without "special justification," which requires more than "the belief 'that the precedent was wrongly decided.'" *Kimble*, 135 S. Ct. at 2409 (quoting *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2407 (2014)). Yet Defendants' premise their entire cause on the argument that the *Klein* conspiracy doctrine has been wrongly decided, claiming that it arose through "a series of analytically unsound" judicial rulings. [Defs.' Br. *Klein* Conspiracy at 19]. In lieu of a

showing of special justification, Defendants invoke the Supreme Court's decision in *Skilling v. United States*, 130 S. Ct. 2896 (2010), which they believe heralds a possible change in the Supreme Court's way of thinking about the *Kline* conspiracy doctrine.

In *Skilling*, the Supreme Court considered the scope of the language "any scheme or artifice to defraud" under 18 U.S.C. § 1346, a fraud statute that proscribes fraudulent deprivations of "the intangible right of honest services," like banking services or health-care services, for example. 18 U.S.C. § 1346; *see* 18 U.S.C. §§ 1344, 1347. The Court declined to adopt an expansive reading of the language "any scheme or artifice to defraud" and instead confined the statute's reach only to fraud in which bribes and kickbacks are part of the fraudulent scheme. *Skilling*, 561 U.S. at 408–09. The Court reasoned that the honest-services fraud doctrine, as embodied in § 1346, "had its genesis in prosecutions involving bribery allegations," and therefore, "[i]n view of this history," a "reasonable narrowing interpretation" of the statute to restrict it to this purpose was appropriate. *Id.* at 408, 409 & n.43.

*Skilling* is far from an abandonment of the Supreme Court's precedent relating to the *Klein* conspiracy doctrine. Unlike § 371, § 1346 is not a statute whose purpose is to protect the welfare of the federal government from fraud; rather, its purpose is to protect the public and private sectors from fraud, specifically the "corruption and denigration of the common good." *United States v. Frost*, 125 F.3d 346, 365 (6th Cir. 1997) (citation omitted); *see Skilling*, 561 U.S. at 413 n.45 (referring to § 1346's application to the public and private sectors); *see also United States v. Bendshadler*, 438 F. App'x 569, 570 (9th Cir. 2011) ("*Skilling* . . . dealt with the mail fraud statute, 18 U.S.C. § 1346, which is

fundamentally different from § 371." (citation omitted)). Based on this distinction, these two statutes operate on different planes and are hardly analogous. *See McNally*, 483 U.S. at 358 n.8 ("[A] statute which . . . has for its object the protection of the individual property rights of the members of the civic body, is one thing; a statute which has for its object the protection and welfare of the government alone . . . [is] quite another." (internal quotation marks and quotation omitted)).

Also, in *Skilling*, the Supreme Court did not signal an intent to diverge from its precedent relating to the *Klein* conspiracy doctrine; in fact, it did not even once mention the doctrine throughout the case. This Court would have to overreach, significantly, to interpret *Skilling* as a departure from the *Klein* conspiracy doctrine, or even as an overture that a departure is on the way. *See Coplan*, 703 F.3d at 61–62 (declining to view *Skilling* as leeway to "'pare' the body of § 371 precedent 'down to its core'" (quotation omitted)); *Bendshadler*, 438 F. App'x at 570 ("Nothing in *Skilling*'s specific, historical interpretation of § 1346 undermined [our] interpretation of § 371[.]" (citation omitted)). *Skilling* therefore provides this Court with no basis to reject the *Klein* conspiracy doctrine, which remains intact under the doctrine of stare decisis, and with no basis to dismiss Count I of the United States' superseding indictment.

## B. Defendants' Second Objection

Defendants also argue, in raising their second objection, that the United States violates the doctrine of duplicity because it charges them with not one but "three distinct conspiracies" in Count I. [Defs.' Br. Duplicity, doc. 22, at 2]. An indictment is

duplicitous when it contains more than one offense in a single count, creating the danger that jurors will become confused about the allegations and "conviction will result from a less than unanimous verdict as to each separate offense." *United States v. Adesida*, 129 F.3d 846, 849 (6th Cir. 1997) (quotation omitted); *see* Fed. R. Crim. P. 7(c)(1) ("The indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting *the* offense charged[.]" (emphasis added)). Defendants contend that the Court, to rectify the threat that the duplicitous allegations pose to them, should dismiss the superseding indictment. [Defs.' Br. Duplicity at 1].

But Judge Shirley informs the Court that, during his hearing at which the parties addressed the issue of duplicity, the parties agreed to use a special verdict form:

> Attorneys [for Defendants] agreed that a speci[al] verdict form allowing the jury to indicate their unanimity as to which of the three ways the conspiracy is alleged to have occurred would address their duplicity concerns. . . . [T]he parties have agreed to use a special verdict form that will permit the jury to report its findings with regard to each of the three types of fraud in which the Defendants are alleged to have engaged.

[R. & R. at 10–11]. Defendants do not challenge Judge Shirley's version of events, and the United States reiterates to the Court that the parties did indeed agree to a special verdict form during the hearing. [United States' Resp. at 4]. In light of the parties' assent to a special verdict form, the Court has no need to consider Defendants' second objection, which is now moot, but the Court invites Defendants to submit a proposed unanimity instruction to accompany the special verdict form for trial. *See United States v. Robinson*, 651 F.2d 1188, 1194 (6th Cir. 1981) ("The rules about multiplicity and duplicity are pleading rules, the violation of which is not fatal to an indictment. . . . [A] duplicitous or

multiplicitous indictment is remediable by the court's instruction to the jury particularizing the distinct offense charged in each count in the indictment." (citation omitted)); *United States v. Kernell*, No. 3:08-cr-142, 2010 WL 1544281, at *1 (E.D. Tenn. Apr. 19, 2010) ("[The] appropriate response to a duplicitous count of an indictment is a carefully drafted jury instruction[.]"); *United States v. McCafferty*, 1:10CR387, 2011 WL 933771, at *10 (N.D. Ohio Mar. 6, 2011) ("[E]ven if the Indictment is duplicitous, a properly augmented instruction, with special verdict forms, will eliminate any risk of a nonunamimous verdict.").

### C. Defendants' Third Objection

Lastly, Defendants argue that certain paragraphs in the superseding indictment constitute surplusage—a defect that, they claim, requires the Court to strike these paragraphs. [Defs.' Br. Surplusage, doc. 18, at 1]. Defendants oppose paragraphs four through thirteen of the superseding indictment's section entitled "Statutory and Regulatory Background for Storing Hazardous Wastes," because they contain no allegations against them. [*Id.* at 4]. Instead, they consist of the United States' recitation of various provisions from the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901, and the Code of Federal Regulations ("CFR"),[3] even though the United States has not charged Defendants under the RCRA. [Defs.' Br. Surplusage at 1–5]. Defendants also challenge paragraph thirteen and paragraphs twenty through twenty-three, in the body of Count I itself. [*Id.* at 6–8]. In these paragraphs, the United States

---

[3] For example, the United States uses the RCRA to define terms like "hazardous waste" and "storage" in the superseding indictment. [Superseding Indictment at 3–5].

alleges that Defendants, as part of the conspiracy under 18 U.S.C. § 371, intimidated an employee to coerce him into impeding the EPA's investigation of the storage of potentially hazardous waste at Protech.

Federal Rule of Criminal Procedure 7(c)(1) requires an indictment to "be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Civ. P. 7(c)(1). In response to an indictment that does not meet these criteria, a court "[u]pon the defendant's motion . . . *may* strike surplusage from the indictment." Fed. R. Civ. P. 7(d) (emphasis added); *see United States v. Kemper*, 503 F.2d 327, 329 (6th Cir. 1974) (stating that "Rule 7(d) . . . makes the striking of surplusage permissive but not mandatory" and the striking of surplusage is in "the sound discretion of the district court" (footnote omitted and citation omitted)). A court may exercise its discretion to strike surplusage "only where it is clear that the language is [1] irrelevant and [2] prejudicial." *United States v. Allen*, No. 3:12-CR-90-TAV-HBG, 2014 WL 3579373, at *2 (E.D. Tenn. July 21, 2014) (internal quotation marks and quotation omitted)); *see United States v. Green*, No. 94-6215, 1995 WL 451782, at *3 (6th Cir. July 27, 1995); *United States v. Moss*, 9 F.3d 543, 550 (6th Cir. 1993).

Under the first element, an indictment's language lacks relevance when it is unnecessary to prove an offense. *United States v. Miller*, 471 U.S. 130, 136–37 (1985); *see Moss*, 9 F.3d at 550 (recognizing that if the United States intends to prove language in an indictment as part of an underlying conspiracy, then it cannot be surplusage). Under the second element, an indictment's language is "unduly prejudicial when it 'serves *only* to [1] inflame the jury, [2] confuse the issues, and [3] blur the elements necessary for

14

conviction[.]'" *United States v. Buck*, No. 10-20305, 2011 WL 576649, at *1 (E.D. Mich. Feb. 9, 2011) (emphasis added) (quoting *United States v. Bullock*, 451 F.2d 884, 888 (5th Cir. 1971)). Any argument under these two elements must be "strictly construed against striking surplusage." *Kemper*, 503 F.2d at 329 (footnote omitted). The Court will now review Judge Shirley's decision not to strike any portion of the superseding indictment, searching for clear legal error, which, again, requires "a definite and firm conviction that a mistake has been committed." *Tri-Star Airlines*, 75 F. Supp. 2d at 839 (quoting *Heights Cmty. Congress*, 774 F.2d at 140).

### 1. Paragraphs Four through Thirteen of the RCRA Section

Again, paragraphs four through thirteen lack allegations against Defendants and contain only excerpts from the RCRA's provisions and the CFR. In claiming that these paragraphs are surplusage, Defendants contest their relevance because the United States has not charged them under the RCRA. [Defs.' Br. Surplusage at 4]. Defendants underscore the fact that the United States has instead charged them with a conspiracy to defraud the federal government under 18 U.S.C. § 371, which requires the United States to prove:

> (A) First, that two or more persons conspired, or agreed, to defraud the United States, or one of its agencies or departments, by dishonest means. The word "defraud" is not limited to its ordinary meaning of cheating the government out of money or property. "Defraud" also means impairing, obstructing or defeating the lawful function of any government agency or department by dishonest means.
>
> (B) Second, the government must prove that the defendant knowingly and voluntarily joined the conspiracy.

> (C) And third, the government must prove that a member of the conspiracy did one of the overt acts described in the indictment for the purpose of advancing or helping the conspiracy.

Sixth Circuit Pattern Jury Instructions § 3.01B (2016). In addition, Defendants contend that the United States' narration of the RCRA's provisions is not only irrelevant but also prejudicial because it is "a recitation of law, drafted by the prosecution and not the Court that the Government wants the jury to hear at the beginning of the case through the reading of the Indictment." [Defs.' Br. Surplusage at 5]. In response, the United States maintains that a jury "cannot be expected to determine whether the defendant intended to impede the EPA's functions without a basic understanding of the agency's mission and the purpose of the [RCRA]." [United States' Br., doc. 27, at 4]. Judge Shirley concluded that the inclusion of the RCRA's provisions in the superseding indictment is relevant background information and non-prejudicial, and therefore is not surplusage.

After carefully reviewing Judge Shirley's decision, the Court cannot identify any clear legal error in his reasoning or conclusion. In this circuit and others, courts have determined that the United States' use of background information in an indictment is not surplusage when—like the RCRA's provisions in this case—it helps to make sense of or establish context for the criminal charges. *See United States v. Daugherty*, No. 5:16-CR-22-DCR-REW, 2017 WL 781048, at *1–3 (E.D. Ky. Feb. 28, 2017) (declining to strike as surplusage an indictment's "lengthy background section concerning the SSA disability determination process"); *United States v. Garton*, No. 3:08-cr-31-JMH, 2009 WL 1424429, at *1, 3 (E.D. Ky. May 21, 2009) (concluding that an indictment contained no surplusage when it included a background section in which the United States "describ[ed]

what [it] [held] out to be a typical oil and gas well drilling program"); *see also United States v. Climatemp, Inc.*, 482 F. Supp. 376, 391–92 (N.D. Ill. 1979) (stating that the indictment's background section about "the sheet metal industry in general" is "indeed relevant to forming an understanding about the nature of this action" and is not prejudicial), *aff'd sub nom. United States v. Reliable Sheet Metal Works, Inc.*, 705 F.2d 461 (7th Cir. 1983), *cert. denied*, 462 U.S. 1134 (1983).[4] Far from constituting clear error, Judge Shirley's decision is consistent with these cases and the general mandate that courts, apart from rare circumstances, must refrain from construing an indictment's language as surplusage. *Kemper*, 503 F.2d at 329.

To the extent Defendants object to the RCRA's language as prejudicial because it is "drafted by the prosecution," [Defs.' Br. Surplusage at 5], their objection would have merit only if the United States' were to mischaracterize the statute, so that it is incomplete or unclear, *see Hamling v. United States*, 418 U.S. 87, 117–118 (1974); *United States v. Landham*, 251 F.3d 1072, 1079–80 (6th Cir. 2001). But Defendants do not argue that the United States' description of the RCRA is inaccurate, and during the hearing, they conceded to Judge Shirley that it *is* accurate. [R. & R. at 13]. In light of their concession—and the relevance of the RCRA's provisions to the alleged conspiracy to impair and impede a lawful function of the EPA—paragraphs four through thirteen are not surplusage, as Judge Shirley concluded. The Court can easily dispel any ongoing misgivings that Defendants have about these paragraphs by issuing to the jury the simple,

---

[4] The Sixth Circuit favorably cited the *Climatemp* case in *United States v. Thomas*, 875 F.2d 559, 562 n.2 (1989).

routine instruction that the superseding indictment is nothing more than a description of the charges against Defendants and not evidence of anything.

### 2. *Paragraphs Thirteen and Twenty through Twenty-Three of Count I*

In paragraph thirteen, the United States alleges that Defendants "attempted to impede [the] EPA's investigation of potential RCRA violations at the facility by intimidating potential witnesses." In paragraphs twenty through twenty-three, the United States adds detail to this allegation:

> 20. [D]efendant Hatfield, upon learning of an EPA investigation into illegal activity at Protech, accessed an email account of a former Protech employee ("the former employee").

> 21. [D]efendant Hatfield upon discovering that the former employee had received an email from a Protech employee ("the employee") transmitting pictures of a tote containing a liquid being drained into an area at Protech adjacent to a drainage conveyance, sent a text message to the employee referencing the email and saying that Hatfield had thought that Hatfield and the employee were friends.

> 22. [D]efendant Huddleston sent a text message to the former employee, stating, "Just so it's clear—[the former employee's father (a Protech employee at the time) and the employee] will lose their jobs because of you—if your campaign against Protech continues."

> 23. [D]efendants Huddleston and Hatfield summoned the employee to Huddleston's office and instructed the employee to call an EPA criminal investigator on speakerphone; defendants Huddleston and Hatfield then listened in on the conversation in which the employee asserted to the EPA criminal investigator that there was no wrong-doing at Protech, without indicating to the EPA criminal investigator that defendants Huddleston and Hatfield were listening to the conversation between the employee and the EPA criminal investigator.

Defendants assert that "there is nothing necessarily intimidating about the conduct alleged" in these paragraphs; that the alleged conduct took place "after the fact," that is,

after the alleged conspiracy had ended; and that the alleged conduct does not rise to the level of "dishonest means" under 18 U.S.C. § 371. [Defs.' Br. Surplusage at 8]. In response, the United States claims that Defendants' alleged acts of intimidation were acts in furtherance of the conspiracy, which it believes was ongoing at the time, and it notes that Defendants cite no case law to support their position. [United States' Br. at 8–9]. In determining that the allegations of witness intimidation are not surplusage, Judge Shirley concluded that they are relevant because they "state how the Defendants allegedly impeded the EPA's investigation," or in other words, because they are alleged overt acts in furtherance of the conspiracy. [R. & R. at 15]. Although Judge Shirley acknowledged that these allegations do carry some prejudice, as do any allegations of wrongdoing, he described them as not unduly prejudicial. [*Id.*]. Judge Shirley also pointed out that because the United States, at trial, intends to prove that the alleged acts of witness intimidation occurred as part of the conspiracy, they cannot constitute surplusage. [*Id.*].

The Court can find no clear error in Judge Shirley's conclusions, and it agrees that the allegations of witness intimidation are not surplusage, for the reasons Judge Shirley relied on but for additional reasons too. *See Burket v. Hyman Lippitt, P.C.*, Nos. 05-72110, 05-72171, 05-72221, 2007 WL 201016, at *2 (E.D. Mich. Jan. 23, 2007) ("A party contending that an order is clearly erroneous or contrary to law may challenge the reasoning upon which the magistrate judge reached his or her decision. The district court may, of course . . . . for other reasons find that the decision of the magistrate judge is not clearly erroneous."). First, the arguments and objections that Defendants raise regarding the relevance of the allegations of witness intimidation are not, as Defendants frame

them, open to redress on a pretrial motion. In contending that the alleged acts of witness intimidation occurred "after the fact," or after the conspiracy's endpoint, Defendants are intruding on the province of the jury. The jury, and the jury alone, addresses factual issues relating to a conspiracy's scope and duration. *See United States v. Cunningham*, 679 F.3d 355, 374 (6th Cir. 2012) (observing that "[t]he duration of [a] scheme to defraud is a question of fact for the jury" (citation omitted)); *see also* Sixth Circuit Pattern Jury Instructions § 3.12 (2016). Similarly, whether Defendants' alleged acts of witness intimidation, as described by the United States, constitute dishonest means under 18 U.S.C. § 371 is also a question for the jury. *See* Sixth Circuit Pattern Jury Instructions § 3.01B(2)(A), (3) (2016) (providing that an agreement between two or more people to defraud the government by dishonest means is one of § 371's essential elements, which the United States must prove beyond a reasonable doubt).

Second, the Court emphasizes that it has license to strike surplusage in an indictment "only where it is *clear*" that it is irrelevant and prejudicial. *Allen*, 2014 WL 3579373 at *2 (emphasis added). An example surplusage that may qualify as clearly prejudicial is a reference to a prior conviction or a sentencing enhancement based on a prior conviction, which has its proper place at sentencing. *See United States v. Rigger*, No. 3:08-CR-27, 2009 WL 331257, at *7–8 (E.D. Tenn. Feb. 5, 2009); *see also Old Chief v. United States*, 519 U.S. 172, 180–82 (1997); *United States v. Gondinez-Rabadan*, 289 F.3d 630, 632 (9th Cir. 2002); *United States v. Jones*, 30 F. App'x 924, 925–26 (10th Cir. 2002); *United States v. Bates*, 77 F.3d 1101, 1105 (8th Cir. 1996). The United States' mere reference to the intimidation of potential witnesses, even against Defendants' view

that the alleged acts are not necessarily intimidating, is not of the same cast as a reference to a prior conviction or sentencing enhancement. And although Defendants appear to believe that the allegations of witness intimidation are out of place because they are more typical under an obstruction of justice charge, [Defs.' Br. Surplusage at 6], the Court is not so sure that this argument helps their cause as to prejudice. If allegations of witness intimidation are indeed unorthodox under 18 U.S.C. § 371, as Defendants say they are, this unorthodoxy may well cut against the United States, not Defendants. *See Coplan*, 703 F.3d at 63, 69 (holding that no sufficient evidence existed to support a conviction under § 371 when the "centerpiece of the conspiracy case" was the United States' claim that the defendant "coached" an individual to lie to the IRS). In short, the Court cannot identify language in the indictment that portends clear prejudice to Defendants, or any reason to alter Judge Shirley's opinion.

## IV.   CONCLUSION

Defendants' Joint Objections to the Report and Recommendation [doc. 61] are **OVERRULED**, and the Report and Recommendation [doc. 58] is **ACCEPTED IN WHOLE**. Defendants' Motion to Strike Surplusage in the Indictment [doc. 17], Motion to Dismiss Count One of the Indictment as Duplicitous [doc. 21], and Motion to Dismiss Count I of the Indictment for Failure to Charge an Offense [doc. 23] are **DENIED**.

**IT IS SO ORDERED.**

ENTER:

_s/ Leon Jordan_____
United States District Judge